IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHN DOE, | Case No.   2:15-cv-02830 |
| Plaintiff, | JUDGE GRAHAM |
| v. | Magistrate Kemp |
| THE OHIO STATE UNIVERSITY, ET AL. | OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT |
| Defendants. | |

Plaintiff John Doe respectfully submits this Opposition to Defendants' Motion to Dismiss the Second Amended Complaint.

**FACTS**

The Court is familiar with the acts of this case. *See e.g. Doe v. Ohio State Univ.,* 219 F. Supp. 3d 645 (S.D.Ohio 2016)(granting in part, and overruling in part, Motion to Dismiss); *Doe v. Ohio State Univ.*, 2016 U.S. Dist. LEXIS 52942 (S.D. Ohio, Apr. 20, 2016) (adopting recommendation on preliminary injunction); .

The facts related to Title IX enforcement at The Ohio State University ("OSU") has also been litigated extensively in other cases before this Court. *See e.g. Waters v. Drake*, 222 F. Supp. 3d 582 (S.D. Ohio 2016); *Doe [II] v. Ohio State Univ.*, S.D.Ohio No. 2:16-cv-171, 2017 U.S. Dist. LEXIS 34725 (Mar. 10, 2017) ("*Doe II*").

Accordingly, the facts need not be repeated.

1

**ARGUMENT**

A.   Standard

In deciding whether to grant a Rule 12(b)(6) motion, this Court is required to accept all well-pleaded factual allegations of the Amended Complaint as true and construe the complaint in the light most favorable to the plaintiffs. *Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012), *quoting Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir. 2007). The Second Amended Complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" that is, "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

B.   The Second Amended Complaint States A Valid Title IX Claim

The Second Amended Complaint states a valid claim under Title IX by suggesting that at the urging of the Department of Education, Office of Civil Rights ("OCR") and other high-ranking officials in the Obama Administration, OSU, like other colleges and universities, has been relying on Title IX to crackdown on male students alleged to have committed sexual assault.

1.   **Response To OCR Pressure**

Defendants challenge the basic inference of the Title IX claim in the Complaint. Pressure from OCR, Defendants argue, can not lead to a reasonable inference of gender discrimination. "Urging Institutions of higher learning to take sexual assaults seriously" Defendants argue," does not plausibly lead to the conclusion that those institutions would, in response, rampantly engage in invidious gender discrimination against male students." Def. Memo. at 3.

The background of this controversy is, of course, the promulgation by OCR of the "Dear Colleague Letter" in 2011. The Dear Colleague Letter, although not regulations adopted according to notice-and-comment rulemaking procedures, spurred schools such as OSU to adopt investigatory and

adjudicatory procedures and practices that unfairly disadvantage accused students. As one federal appeals court judge recently observed, "These policies were developed by bureaucrats in the U.S. Department of Education and thrust upon educators with a transparent threat of withholding federal funding." *Plummer v. Univ. of Houston*, 5th Cir. No. 15-20350, 2017 U.S. App. LEXIS 11268, at *24 (June 23, 2017) (Jones, J., dissenting). A number of recent lawsuits challenging these procedures have survived preliminary motions as federal courts expressed concern about the failure of schools to comply with their own procedures. *See e.g, Brown Univ.,* 166 F. Supp. 3d 177 (D.R.I. 2016) (denying motion to dismiss breach of contract claim based on alleged "pressure [from OCR] on universities"); *Doe v. Amherst College*, D.Mass. Civil Action No. 15-30097-MGM, 2017 U.S. Dist. LEXIS 28327, at *41 (Feb. 28, 2017) (denying motion for judgment on pleadings for breach of contract for school policies enacted due to OCR pressure); *Naumov v. McDaniel College, Inc.*, D.Md. No. GJH-15-482, 2017 U.S. Dist. LEXIS 49887, at *29 (Mar. 31, 2017) (rejecting argument that Dear Colleague Letter required breach of college handbook); *Collick v. William Paterson Univ.*, D.N.J. No. 16-471 (KM) (JBC), 2016 U.S. Dist. LEXIS 160359, at *69-70 (Nov. 17, 2016)("the Complaint sufficiently alleges that Defendants did not adhere to [the school's] own rules, that the procedure they followed was unfair, and that the decision was not based on sufficient evidence"); *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 600 (D.Mass.2016)("the Court concludes that the complaint plausibly alleges that [the school] did not provide 'basic fairness' to" accused student); *Doe v. Lynn Univ., Inc.*, S.D.Fla. No. 9:16-CV-80850, 2017 U.S. Dist. LEXIS 7529, at *17 (Jan. 19, 2017) (plaintiff stated valid claims for of contract and breach of the implied covenant of good faith and fear dealing in connection with sexual assault investigation).

Accordingly, the inference that schools are motivated by pressure from OCR is, in fact, a reasonable inference that other courts have, on a motion to dismiss standard, drawn. In *Doe v. Brandeis University*, a federal court refused to dismiss a lawsuit of a student who was disciplined for unwanted

3

sexual conduct arising in the course of a dating relationship. The court noted that that the school had, in fact, adopted procedures that "substantially impaired, if not eliminated, an accused student's right to a fair and impartial process" as a direct result of pressure from OCR. The court said:

> When considering the issues presented in this case, it is impossible to ignore entirely the full context in which they arose. In recent years, universities across the United States have adopted procedural and substantive policies intended to make it easier for victims of sexual assault to make and prove their claims and for the schools to adopt punitive measures in response. That process has been substantially spurred by [OCR], which issued a "Dear Colleague" letter in 2011 demanding that universities do so or face a loss of federal funding.

2016 U.S. Dist. LEXIS 43499, at *12-13. In a prior decision in this case, this Court observed that the failure of a school to comply with guidance by the Office of Civil Rights on Title IX "could jeopardize its federal funding." *Doe v. Ohio State Univ.*, S.D. Ohio No. 2:15-cv-2996, 2016 U.S. Dist. LEXIS 7700, at *30 (Jan. 22, 2016). And, succinctly, another court has observed, directly contrary to Defendants' statement, "it is plausible that [the school] was under pressure to convict students accused of sexual assault in order to demonstrate that the school was in compliance with the OCR's guidance." *Doe v. Wash. & Lee Univ.*, W.D.Va. No. 6:14-cv-00052, 2015 U.S. Dist. LEXIS 102426, at *23-24 (Aug. 5, 2015).

### 2. The Validity of the Title IX Claim

The Second Amended Complaint, in Count III, states a valid erroneous outcome claim against OSU based on Title IX, the federal statute designed to prevent sexual discrimination in educational institutions receiving federal funding. 20 U.S.C. § 1681 *et seq*. Title IX claims against universities arising from disciplinary hearings are analyzed under the "erroneous outcome" standard, "selective enforcement" standard, "deliberate indifference" standard, and "archaic assumptions" standard. *Mallory v. Ohio Univ.*, 76 Fed. App'x 634, 638 (6th Cir. 2003) (internal citations omitted). In an

erroneous outcome case, a party asserts that he or she was innocent and wrongly found to have committed the offense. *Id. Yusuf v. Vassar Coll.*, 35 F.3d 709, 714-16 (2d Cir. 1994).

The key cases in evaluating Plaintiff's claim are *Yusuf, supra.* and *Doe v. Columbia Univ.*, 831 F.3d 46 (2016).[1] In *Yusuf*, the Second Circuit explained that in order to assert a claim based on an erroneous outcome/selective enforcement theory the Plaintiffs need to allege that the hearing was flawed due to the Plaintiffs' gender. The key language from the decision addresses the allegations at the pleading stage:

> A plaintiff must . . . also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding. Allegations of a causal connection in the case of university disciplinary cases can be of the kind that are found in the familiar setting of Title VII cases. Such allegations might include, inter alia, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender.

---

[1] In *Columbia*, the Second Circuit said that a pleading "is sufficient with respect to the element of discriminatory intent" if it "pleads specific facts that support a minimal plausible inference of such discrimination." 831 F.3d at at 56. The *Columbia* opinion's use of the adjective "plausible" reflects the view that on a motion to dismiss under Rule 12(b)(6), the criteria articulated in *Iqbal* apply to discrimination claims based on gender at colleges and universities, which must also be evaluated in accordance with the *McDonnell-Douglas* framework.

Defendants criticize the *Columbia* decision, suggesting that the decision adopted a "lesser standard of pleading" inconsistent with *Iqbal*. Def. Memo. at 5, *citing Doe v. University of Colorado-Butler,* D.Colo. Civil Action No. 16-cv-1789-WJM-KLM, 2017 U.S. Dist. LEXIS 81585 (May 26, 2017). This criticism is unfounded. One court noted that the "interpretation of *Iqbal*" urged by schools "asks the court to disbelieve or infer against [students], which the court cannot do on Rule 12(b)(6) motions." *Neal v. Colorado State Univ.-Pueblo*, D.Colo. Civil Action No. 16-cv-873-RM-CBS, 2017 U.S. Dist. LEXIS 22196, at *44-45 (Feb. 16, 2017). The decision in *Columbia* has been followed by other courts. These courts, applying the *Iqbal* standard, found that allegations that schools were cognizant of criticism levied at their handling of sexual assault complaints by female students against males, combined with more general assertions about similar nationwide pressure, were sufficient to survive motions to dismiss. *See e.g. Doe v. Lynn Univ., Inc.*, S.D.Fla. No. 9:16-CV-80850, 2017 U.S. Dist. LEXIS 7529, at *13 (Jan. 19, 2017) (following *Columbia;* the "Amended Complaint supports the plausible inference of a causal connection between the flawed outcome and gender bias").

5

35 F.3d at 715 (citations omitted). As noted in Plaintiffs' Motion, *Yusuf* was followed by *Columbia*. In *Columbia*, *supra*, the Second Circuit held that a complaint stated a valid claim under Title IX, and thus survived a motion to dismiss, based on allegations that the school had adopted a biased approach in response to pressure from the Department of Education

The Sixth Circuit has explicitly adopted the *Yusef* approach to these types of cases. *Doe v. Cummins*, 2016 U.S. App. LEXIS 21790, at *35 ("we have previously looked to the Second Circuit's decision in *Yusuf*"). In *Cummins*, the Sixth Circuit reviewed a Title IX claim against the University of Cincinnati ("UC") in the context of both *Yusef* and *Columbia*. Significantly, the Sixth Circuit did not contest the conclusion in *Columbia* that the school had adopted a biased approach in response to pressure from OCR. Instead, the Sixth Circuit distinguished the *Columbia* decision based on two facts present in the *Columbia* case but not present against UC at that time:

> [1] [Plaintiffs] do not allege that UC or any of its officials had faced public criticism for their handling of Title IX investigations prior to appellants' hearings. [2] Nor do [the Plaintiffs] allege that UC—unlike Columbia University—was being investigated by the federal government for potential Title IX violations.

*Doe v. Cummins*, 2016 U.S. App. LEXIS 21790, at *38.

Both of the facts missing in the *Doe v. Cummins* case are present in the Second Amended Complaint.[2] First, OSU, unlike UC in *Cummins,* was under investigation by the Department of Education. At the time of the *Doe v. Cummins* case, UC was *not* under investigation by the Department of Education.[3] The absence of an investigation by the Department of Education appears to have been a dispositive factor for the Sixth Circuit, as the court observed:

---

[2] The use of the term "nor" by the Sixth Circuit suggests that *either* of the conditions – criticism or an OCR investigation – is sufficient to satisfy the pleading requirements and that *both* are not necessary.

[3] Defendants state in a conclusory manner that "OCR concluded that OSU's policies and practices were sound and fair." Def. Memo. at 12. This is substantial revisionist history. Or, more accurately, a false statement consistent with the false characterization of the OCR investigation by OSU administrators that the school proactively contacted OCR for a review. (Second Amended Complaint ¶21.) In fact, OCR demanded that OSU make changes to its program as part of a settlement

6

> The complaint states that the federal government is investigating at least 129 schools for possible Title IX violations related to sexual assaults and then lists several schools that are the subject of those investigations. *Notably absent is the University of Cincinnati.*

*Doe v. Cummins*, 2016 U.S. App. LEXIS 21790, at *31 n.6 (emphasis supplied). This is 180 degrees different from this case. The Second Amended Complaint alleges that OSU was under investigation by OCR at the time it was evaluating the allegations against John Doe.[4] (Amended Complaint ¶20 and Exhibit A.) In fact, the Second Amended Complaint goes further by alleging that OSU took certain steps to make it more difficult for students accused of sexual assault to defend themselves as a direct result of the OCR investigation: "As part of the agreement, OSU was required to take certain steps that had the effect of undermining the presumption of innocence and eliminating any burden of proof on those seeking to demonstrate misconduct by another student." (Second Amended Complaint ¶24.)

Second, in *Cummins,* a similar allegation about pressure from OCR was made as was present in *Columbia*: "Partly out of concern for the Department of Education enforcement . . . UC [erroneously] decided to impose discipline on [students]. . . to demonstrate to the Department of Education that Defendant would take action against males accused of sexual harassment." The Sixth

---

agreement after finding that it was not in compliance with the law. OCR in its press release announcing the settlement with OSU said, "OCR determined that the university is in violation of Title IX because its written policies and procedures for responding to complaints, reports and other incidents of sexual violence and harassment do not comply with the law's requirements." *See* Sept. 11, 2014 Press Release, available at https://www.ed.gov/news/press-releases/us-department-education-reaches-agreement-ohio-state-university-address-and-prev.

[4] The Defendants argue that the Amended Complaint fails to allege that any of the decision-makers for the John Doe case were aware of the OCR investigation. Def. Memo. at 28. This seems to impose an impossible pleading standard and is contrary to the holding of *Columbia*. Moreover the inference that this investigation influenced OSU decisions in regards to John Doe can be reasonably drawn from the timing of OSU actions in deciding John Doe's appeal. The Second Amended Complaint alleges that OSU administrators delayed On "ruling on the appeal while OSU finalized negotiations with OCR" and notes that after a substantial delay John Doe was informed that he would be expelled merely "two days after OSU President Michael Drake, on behalf of OSU, signed the revised resolution agreement" with OCR. (Second Amended Complaint ¶¶86(b)-86(c).)

7

Circuit characterized this as a conclusory allegation. But, in this case, there is more that just a conclusory allegation. The Second Amended Complaint has also alleged that, unlike UC in the *Cummins* case, OSU's administrators were cognizant of that pressure from both the public and the advocates of female students. Specifically, the Second Amended Complaint highlights pressure from national media outlets such as the New York Times and Slate. (Second Amended Complaint ¶19.) The Second Amended Complaint also references gender-based criticism from students and the faculty. (Second Amended Complaint ¶24.) That, by itself, makes the instant case more similar to *Columbia*, which the *Cummins* opinion distinguished as "involv[ing] additional facts substantiating the plaintiff's claim that federal-government influence had led to gender bias in the university's enforcement proceeding."

The Second Amended Complaint, thus, supports the plausible inference of a causal connection between the flawed outcome and gender bias. Defendants suggest that the Second Amended Complaint is "entirely devoid of any factual allegations tying the outcome of [John Doe's] case to his gender." Def. Memo. at 7. This is incorrect. The Second Amended Complaint suggests that before the decision to discipline John Doe was made, OSU faced criticism for its handling of sexual assaults.[5] The Second Amended Complaint suggests that OSU, like other schools nationwide,

---

[5] Defendants argue that "There is not a single fact stated in Plaintiff's Second Amended Complaint which plausibly demonstrates that the OCR review resulted in pressure on OSU to engage in gender discrimination against Plaintiff." Def. Memo. at 12. This is incorrect. The Second Amended Complaint alleges, in fact, that the final decision on the allegations against John Doe was delayed while the agreement with OCR could be finalized. (Second Amended Complaint ¶86(b).) More generally, the Second Amended Complaint alleges that OSU, as part of the agreement with the Department of Education, "agreed to revise its policies and procedures on sexual harassment and sexual assault" and that as part of the agreement, OSU was required to take action which made it more difficult for male students to defend against claims of sexual misconduct. The Second Amended Complaint states: "OSU was required to take certain steps that had the effect of undermining the presumption of innocence and eliminating any burden of proof on those seeking to demonstrate misconduct by another student." Second Amended Complaint ¶24.

8

faced intense pressure to change procedures or risk the loss of federal funding. This has resulted in policies that discriminate on the basis of sex:

> In response to pressure from OCR, DOJ, and the White House, educational institutions, like OSU, are limiting procedural protections afforded to male students, like John Doe, in sexual misconduct cases. The Association of Title IX Administrators, which on information and belief OSU staff members participate in, published "2014 Whitepaper" entitled Equity is Such a Lonely Word, includes training materials presented to college Title IX departments and states: "victims have historically been accorded 3/5 of the rights of an accused individual (or less), and victims are typically women, equity may require institutions to recalibrate the pendulum to right the historical imbalance." (emphasis added).

(Second Amended Complaint ¶18.) The Second Amended Complaint further describes criticism of OSU, specifically, in the national media for its handling of allegations of sexual assault and suggesting that OSU acted in response to the national pressure. (Second Amended Complaint ¶19.) The Second Amended Complaint then falls clearly within the holding of *Columbia* by alleging that the action against John Doe was a direct result of this criticism:

> On information and belief, facing an investigation by OCR and after having been severely criticized in the student body and in the public press for toleration of sexual assault of female students, OSU was motivated in this instance to accept the female's accusation of sexual assault so as to show OCR, the student body, and the public that OSU is serious about protecting female students from sexual assault by male student. The investigator, hearing panel, and administration adopted a biased stance in favor of the accusing female and against the defending male in order to avoid further fanning the criticisms that OSU turned a blind eye to such assaults.

(Second Amended Complaint ¶118(b).)

The Defendants focus on Paragraph 29 of the Second Amended Complaint, suggesting that it references only "a single blog posting by an anonymous student."[6] Def. Memo. at 10. The Defendants ignore the reference to the visit by Vice President Biden aimed at encouraging OSU to continue to crackdown on sexual assault allegations. (Second Amended Complaint ¶29(c).) The

---

[6] The anonymous blog post turns out to be neither anonymous nor a blog post, but instead is an article by a named OSU student at an online news platform. (Second Amended Complaint ¶29(a).)

9

Defendants also ignore the open letter from the faculty of the Department of Women's, Gender and Sexuality Studies at OSU published in the school newspaper. (Second Amended Complaint ¶29(b).) Most importantly, there is no real need to draw a large inference from pressure on OSU and actions by OSU, as the OSU President admitted: "We are deeply concerned by sexual misconduct and relationship violence both at Ohio State and at institutions of higher learning across the nation." (Second Amended Complaint ¶30.)

Lest there is any confusion that the OSU President, as quoted in the prior paragraph, meant to have OSU adopted policies that favor female accusers, the Second Amended Complaint states that OSU's President in a report "recommended that a school system should not be aimed at determining whether a sexual assault has occurred, but should, instead, assume that a sexual assault did occur." (Second Amended Complaint ¶ 28(d).) The Second Amended Complaint, later, describes how "OSU has taken a 'victim centered approach' towards allegations of sexual misconduct which leads to bias in the system and an uneven adjudicatory process." (Second Amended Complaint ¶40.) Under the "victim-centered approach," OSU has adopted a system where the allegations of purported female victims against male students are accepted as true without any investigation being performed and without the development of any facts or exculpatory evidence. The non-conclusory allegations that OSU has adopted an unfair "victim-centered" system are supported by quotes from Defendant Adams-Gaston, the Ohio Board of Regents, and references to the OSU web pages. (Second Amended Complaint ¶¶ 40(b), 41.)

Defendants suggest that favoring "victims" over the accused does not, necessarily, suggest gender bias.[7] Def. Memo at 8-9 (collecting cases). The Plaintiffs, certainly at the pleading stage, are

---

[7] This is a strange contention; if true then Plaintiff would automatically entitled to judgment on his Due Process claim. The Due Process clause does not differentiate between permissible and impermissible forms of bias. Fundamental to Due Process is an *impartial* trier of fact; a system biased against the accused and in favor of alleged victims by definition violates due process guarantees. *See*

10

not required to present a "smoking gun" in which an OSU administrator admits to gender bias.[8] A complaint is not subject to dismissal because it lacks direct evidence of unlawful conduct, even if the Court believes that discovery is not likely to yield this evidence. "[O]f course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007), *quoting Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) In this case, as set forth *supra*, an examination of the allegations of bias demonstrate that they are more than sufficient under the *Twombley* (and *Iqbal*) standard.

The Defendants essentially question the link between pressure on OSU, including the pressure generated by the OSU Band matter, and discriminatory actions against the Plaintiff. Def. Memo. at 11. The band matter, in particular, appeared to play a key role in the OCR review of how OSU handled allegations of sexual assault and sexual harassment on campus. The Second Amended Complaint describes how, for example, OCR cited to the band matter in announcing the resolution of the OSU investigation. (Second Amended Complaint ¶23.) There is nothing implausible or unreasonable about the Second Amended Complaint's suggested inference that OSU adopted a biased stance in favor of the accusing female and against the defending male student to avoid further criticisms that UC has turned a blind eye to "rape culture" and to appear as though OSU is 'tough' on sexual assault.[9] This

---

*EJS Properties, LLC v. City of Toledo,* 736 F.Supp.2d 1123, 1129 (N.D. Ohio 2010) ("A decision by a biased or corrupt decision-maker may constitute a deprivation of procedural due process."); *Beauchamp v. De Abadia*, 779 F.2d 773, 776 (1st Cir. 1985) ("An impartial decision-maker is, of course, a fundamental component of due process.").

[8] Indeed, it would be shocking to find such an admission. University administrators are too smart to make such a mistake. As a result, bias must be inferred.

[9] The Defendants attempt to defend the false testimony of Brennan described in Paragraph 21 of the Second Amended Complaint. OSU focuses on whether Brennan used the term "investigation" or "compliance review." Def. Memo. at 12 n. 2. This was not the misleading statement. Brennan's false statement concerned the *initiation* of the "investigation" or "compliance review." Brennan falsely suggested that OSU "proactively" reached out to the Department of Education when, in reality, OSU

11

is the essential holding of *Columbia*. 2016 U.S. App LEXIS 13773 at *29. The Sixth Circuit, when given an opportunity to criticize the reasoning of *Columbia* in the *Doe v. Cummins* case, declined to do so.[10]

In this respect, John Doe's case is analogous to another recent case wherein a motion to dismiss the Title IX claim by a student expelled for an alleged sexual assault was denied. *Doe v. Brown Univ.*, *supra*. In the *Brown* case, the court examined the conflicting authority on this issue, but concluded that a complaint brought by a male student does not, on a 12(b)(6) standard, require "statistical evidence and/or data analysis that female students accused of sexual assault were treated differently." The court, in doing so, rejected an argument that the Title IX claim in the Amended Complaint should be dismissed because it contains nothing more that "speculation and tenuous inferences." The *Brown* court observed that "such a standard, is both practically impossible and inconsistent with the standard used in other discrimination contexts." *Id.* at *26. The *Brown* court also observed that "the best information for discerning whether alleged discrimination was based on the plaintiff's gender as opposed to his status as an accused student is generally in the possession of the defendant" and that "given the nonpublic nature of the underlying information, the type of evidence . . . is more akin to what would be required at summary judgment." *Id.* at *30. *Cf. Wells v. Xavier*, 7 F. Supp. 3d 746, 751 (S.D. Ohio 2014) (finding the plaintiff pleaded facts sufficient to cast doubts on the accuracy of a disciplinary proceeding by alleging, inter alia, that the defendants rushed to judgment and failed to train the disciplinary hearing panel); *Doe v. Case W. Reserve Univ.*, No. 1:14CV2044, 2015 U.S. Dist. LEXIS 123680, at *5 (N.D. Ohio Sept. 16, 2015) (finding that the plaintiff pleaded facts sufficient to cast doubts on accuracy of a disciplinary proceeding outcome by

---

was reacting to an investigation initiated by the Department of Education. Brennan also allegedly lied when asked if OSU had adopted a "victim centered" approach. (Second Amended Complaint ¶41(b).)

[10] The decision by Judge Beckwith in *Doe v. Cummins* was prior to *Columbia*.

alleging that the defendant, *inter alia*, did not allow the plaintiff to review that evidence and denied the plaintiff the opportunity to cross examine his accuser).

3.     **Recent Decisions**

A recent decision of this Court found that a Title IX claim against OSU could survive a motion to dismiss. *Doe II*, *supra*. In *Doe II,* a male student at OSU was accused of violating OSU's Code of Student Conduct, specifically sexual misconduct. OSU investigated and adjudicated the claims in *Doe II* a mere few months preceding the facts underlying the claims presented in this case. The student in *Doe II* was found responsible and dismissed from OSU. He subsequently brought a complaint alleging a violation of Title IX. In every respect relevant to the Title IX claim in the Second Amended Complaint, these cases are identical.

In *Doe II,* this court denied a motion to dismiss an "erroneous outcome" Title IX claim. The plaintiff in *Doe* II, as in this case, offered "indirect/circumstantial evidence of gender bias," including evidence of pressure from OCR. He specifically suggested that there was a "temporal connection between the [OCR] investigation of OSU and OSU's investigation of John Doe." 2017 U.S. Dist. LEXIS 34725 at *40. This Court observed:

> There is little doubt that universities around the country have felt pressure to tighten the investigation and punishments in sexual misconduct cases because this is a very sensitive issue. However, there are genuine concerns raised in these cases and general publications regarding how universities are handling the investigations.

2017 U.S. Dist. LEXIS 34725 at *46-47. The Plaintiff also pointed to this case and the *Waters* case.

> The complaint in Waters was filed in September 2014, less than two months before OSU charged John Doe with sexual misconduct. Although Waters was ultimately dismissed on summary judgment, the case and the general allegations surrounding it— that OSU and the OSU marching band tolerated a sexualized environment on campus—were highly publicized. There is a strong possibility, as alleged by Plaintiff, that these lawsuits could have impacted John Doe's disciplinary process. Therefore, based on all of the above referenced allegations, at this stage in the proceedings, Plaintiff has made sufficient general allegations of gender bias in cases similar to his to suggest there is discrimination in the investigation [*49] and hearing process of sexual misconduct cases

13

2017 U.S. Dist. LEXIS 34725 at *48-49. The reasoning and result in *Doe II* should apply in this case, as well.[11]

Two other recent post-*Cummins* decisions are consistent with *Doe II* and support the denial of the Motion. *Doe v. Lynn Univ.*, Inc., S.D.Fla. No. 9:16-CV-80850, 2017 U.S. Dist. LEXIS 7529 (Jan. 19, 2017); *Neal v. Colorado State Univ.-Pueblo*, D.Colo. Civil Action No. 16-cv-873-RM-CBS, 2017 U.S. Dist. LEXIS 22196 (Feb. 16, 2017). In *Lynn Univ.*, as in this case, the plaintiff, relying on news media reports, alleged that the school had been criticized for failing to take seriously complaints by female students alleging sexual assault by males. The plaintiff also, as in this case, pointed to "allegations about national pressure to crack down on sexual assault." The *Lynn Univ.* court distinguished *Cummins*. The court observed, In denying a motion to dismiss, the court said,

> Plaintiff's allegations of national pressure are just another pebble on the scale. . . Plaintiff, having alleged that Defendant's representatives were cognizant of criticism levied at Defendant's handling of sexual assault complaints by female students against males and having coupled those allegations with (albeit more general) assertions about similar nationwide pressure, has done enough. The Amended Complaint supports the plausible inference of a causal connection between the flawed outcome and gender bias.

2017 U.S. Dist. LEXIS 7529 at *13. In *Neal*, a student alleged that the school was influenced by the pressure or coercion of OCR "to slant the procedures . . . so as to demonstrate to DOE/OCR that it would find accused men — not just accused persons of any gender — responsible for sexual misconduct." In recommending the denial of a motion to dismiss, a magistrate judge observed that there was a split in the approach taken by courts, but suggests:

---

[11] *Doe v. Miami Univ.*, S.D.Ohio No. 1:15cv605, 2017 U.S. Dist. LEXIS 45675 (Mar. 28, 2017), is not to the contrary. In that case, this Court (Barrett, J.) dismissed a Title IX claim against Miami University. In doing so, this Court distinguished *Doe* II, observing, in part that charges of sexual assault at the school "did not result in the same type or level of publicity as the *Waters* litigation."

> courts that reject similar allegations (for example, that male respondents are always found guilty regardless of the evidence, or that the school used the plaintiff to placate either [OCR] or the public) appear to draw inferences against the plaintiff, weigh facts in a manner . . . reserve[d] for motions for summary judgment or trial, or rely on the lower court decision that *Columbia* later reversed as employing an erroneously high pleading standard.

2017 U.S. Dist. LEXIS 22196 at *33.

## CONCLUSION

The Motion should be denied.

Respectfully submitted,

_____/s/ Joshua Adam Engel_____
Joshua Adam Engel (0075769)
ENGEL & MARTIN, LLC
5181 Natorp Blvd., Suite 210
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been electronically served via the Court's CM/ECF system this 18th day of August 2017 upon all counsel of record.

_____/s/ Joshua Adam Engel_____
Joshua Adam Engel (0075769)